THE PEOPLES BANK OF GREENVILLE v. BRAMLETT. .

1. ABATEMENT—SURVEY—REAL ESTATE.—Where lands are offered at judicial sale by certain metes and bounds, and afterwards it is ascertained that a portion within such boundary is covered by title paramount, it is not necessary to have survey to ascertain that bidder has not received number of acres sold.

2. IBID.—IBID.—IBID.—Purchaser of lands by certain metes and bounds is entitled to abatement to cover deficiency of any portion within such boundaries previously covered by title paramount.

3. IBID.—JUDICIAL SALE—REAL PROPERTY—ESTOPPEL.—Purchaser of land at equity sale is not estopped by constructive notice of judgment from seeking, before compliance, abatement for defect in acreage.

4. REAL ESTATE.—IBID.—MASTER may report refusal of purchaser to comply with bid on ground of defective title, and not resell at risk of purchaser, although the order of sale so provides.

5. IBID.—IBID.—ABATEMENT—ESTOPPEL—FORECLOSURE.—Purchaser    at foreclosure sale by metes and bounds, before completing his contract, or doing anything to estop him, may have abatement for defect in acreage within such boundaries. Executory contract of purchase at judicial sales defined. *Latimer* v. *Wharton,* 41 S. C., 508, *distinguished from this.*

6. IBID.—IBID.—IBID.—MISREPRESENTATION of acreage within certain boundaries is good ground for abatement of bid at judicial sale after execution of contract.

Before TOWNSEND, J., Greenville, April, 1899. Affirmed.

Application by H. J. Haynsworth for abatement of bid on account of defective acreage, in The Peoples Bank of Greenville against W. A. Bramlett and others. From Circuit order granting abatement, Ella M. Townes, mortgagee, appeals.

*Messrs. L. K. Clyde* and *W. H. Irvine,* for appellant, cite: *As to notice:* 15 S. C., 127; 32 S. C., 481; 28 S. C., 47; 9 Rich. Eq., 19; 45 S. C., 393; 53 S. C., 315. *On main question:* 35 S. C., 404; 41 S. C., 200; 4 McC., 434; 2 Speer, 68; 23 S. C., 205; 13 S. C., 214; 41 S. C., 516.

*Mr. L. O. Patterson,* contra, cites: *On main question:* 16 S. C., 276; 15 S. C., 124.

Aug. 21, 1900. The opinion of the Court was delivered by

MR. JUSTICE JONES. This appeal is from a decree of the Circuit Court allowing a purchaser, at a foreclosure sale of land, an abatement in the price, on account of a defect in the title to a part of the land sold. The case is thus stated in the Circuit decree: "This case comes before me upon the master's report, which shows that H. J. Haynsworth had purchased one of the tracts of land ordered to be sold at the price of $2,500, but that after his bid he ascertained that a certain portion of the land had been recovered from the mortgagor by title paramount, in the case of Spillors *v.*

Bramlett, and he claimed an abatement of $150 from the price, because of the failure of the title to said portion. The affidavit of Mr. Haynsworth shows that he did not know that a good title to said portion of the land would not be conveyed by the master's deed, and that the lands were worth about $15 per acre. The record in the case of Spillors v. Bramlett shows a recovery of a portion of this Jenkins tract, said to contain about twelve acres. The decree of foreclosure and the advertisement under which the land was sold describe it as the Jenkins tract, and state specifically the lines, metes and bounds, and describe it as containing 166 acres, more or less. The portion recovered by Spillors is included within these lines. On learning the situation, Mr. Haynsworth deposited in the hands of the master enough money to cover the cash portion of the bid, making due allowance for the above deficiency; this was not made as a payment upon his bid, but was a mere deposit to await the determination of the Court upon the matter. I find from the evidence before me that the abatement applied for, to wit: $150, is reasonable and should be allowed, unless there is some rule of law forbidding it.

The land was sold at a full price, and it seems just that the purchaser should not be required to pay for a portion which he cannot get. The application for abatement is resisted by the attorneys of one of the mortgagees, Mrs. Townes. She claims that the purchaser at a sale under a decree of foreclosure is not entitled to any relief, where there is a deficiency, or a failure of title as to a portion of the property. This position may be correct after the contract has been executed and the deed of conveyance made, and the authorities cited by the attorneys for the mortgagees tend to support such contention. But there is quite a difference where the contract is executory. The general doctrine is, that one who agrees to purchase land will be allowed a reasonable opportunity to investigate the title, and if he finds that the title fails as to a portion, or there is defect in the title, he will be allowed to rescind the trade or an abatement from the pur-

chase price. After the contract has been executed, however, and the deed actually made, the purchaser must look to the warranty contained in his deed, and he is entitled to only such remedy as he has under that warranty. The present case is one where the contract is wholly executory, and I think the general rule applies to this case, and entitles the purchaser to an abatement of the price."

1. The first exception imputes error in allowing the abatement, when there was no evidence offered to prove such deficiency, or to show that the purchaser would not under the master's deed get 166 acres as claimed by him, there having been no survey made of the land. The affidavit of the purchaser was before the Court, which stated "that a part of this land was recovered by A. Spillors about 1890, thus taking a part of the land included within the lines, metes and bounds by which it was sold to deponent, and deponent has been unable to get possession of said portion, although it is included within said metes and bounds." The master reported that the purchaser, Haynsworth, claims a reduction upon his bid of $150, for the reason that it appears from the record of the case of Spillors *v.* Bramlett that a portion of the tract bid off by him, containing about twelve acres, was recovered by plaintiff in that action by title paramount prior to the institution of this suit of foreclosure. The Circuit Court found that "the record in the case of Spillors *v.* Bramlett shows a recovery of a portion of this Jenkins tract, said to contain about twelve acres." It is stated in the argument of appellant that the record in the case of Spillors *v.* Bramlett was not put in evidence, and no evidence was offered at the hearing of the master's report, except the affidavit of respondent. But the findings by the Circuit Court as to what the record in Spillors *v.* Bramlett shows, is not specifically excepted to, and we cannot assume that such finding was without evidence. The fact of a deficiency by reason of the recovery in Spillors *v.* Bramlett, was shown by respondent's affidavit, which was not in any way disputed, and appellant made no effort whatever to show that

it was less than claimed by respondent. We are satisfied appellant has not been prejudiced in this matter. It was not at all necessary to have a survey to ascertain whether respondent might not acquire 166 acres by his purchase, notwithstanding said deficiency. The respondent bid for a tract described by designated boundaries; the deficiency arose from a failure of title to a portion within those boundaries; and the Court has found that an abatement to the extent of $150 on the purchase price of $2,500 would be reasonable, to which there is no specific exception.

2. The second exception assigns that it was error to allow such abatement when said tract was sold as a body, for a sum in gross, the number of acres stated in the advertisement, being used as a part of the description of the property, as evidenced by the advertisement and the use of the expression "more or less." The tract involved was described in the mortgage, complaint, decree and advertisement for sale as follows: "The Jenkins tract, containing 166 acres, more or less, conveyed to W. A. Bramlett by O. H. Jenkins, November 4, 1876, recorded in R. M. C. office book II., page 223, described as follows (giving a minute description by courses and distances and corners): adjoining lands of Goghill, Hide and others." It is true that the tract was sold as a body for a sum in gross, but it will be observed that the deficiency in question is not a mere deficiency in quantity arising from a mistake or variation in calculation of the acreage contained in specified boundaries, but the deficiency arises from failure of title to a part of the land within the given boundaries. If the deficiency was merely due to an error or variation in a surveyor's calculation, and the purchaser could nevertheless take the land within the specified boundaries, such deficiency being only six per cent. of the acreage mentioned, would be guarded against by the words "more or less" in the description, and would not be such a gross variation as would call for redress, as shown in such cases as *Lyles* v. *Haskell,* 35 S. C., 391, and *Erskine* v. *Wilson,* 41 S. C., 198. But in this case the purchaser can-

31—58

not get the land specifically defined by metes and bounds and corners, since a portion of it is not in the power of the Court to convey, it having been taken from the mortgagor by title paramount. The purchaser bought the "Jenkins tract," whatever its acreage, but cannot receive a title for the whole of said tract.

3. "It is excepted that the purchaser is estopped to claim abatement, because with knowledge of said deficiency he paid a part of the purchase money, went into possession of the property and rented the same for the year 1899." This exception has no basis in the facts as shown by the record before us, by which we must be governed alone. There is no evidence whatever that the purchaser went into possession and rented the land, and the record distinctly shows that the purchaser refused to comply with the terms of sale unless an abatement of $150 was allowed.

4. It is contended that the purchaser ought to be denied any relief because he had constructive notice of the judgment recovered in the case of Spillors *v.* Bramlett, recorded in Greenville County prior to the execution of the mortgage. The purchaser swears positively that he had no knowledge of the deficiency at the time of purchase or bid. Whether a purchaser at an equity sale shall be held bound by constructive notice of all recorded judgments affecting the property sold, so as to defeat relief for defect of title actually discovered after the sale and before compliance, will depend upon whether it is the policy of the Court of Equity in this State to allow purchasers at sales under its order a reasonable time to examine into the title before compelling compliance. In *Mitchell* v. *Pinckney,* 13 S. C., 212, it was stated: "Reasonable time is always given for the examination of titles, and, if necessary, a reference will be ordered." We take it that this expresses the policy in this State, and it is a fair and just one to all concerned, and is well calculated to inspire confidence and promote competition at equity sales. Such being the rule, we do not well see how purchasers at equity sales should be denied relief for

defect of title, on the mere ground that they are bound by
constructive notice of such defect, unless it be that relief is
never to be afforded for defect of title which a full examina-
tion of the records would disclose, which would for most
practical purposes be a denial of relief for defective title.   If
one has actual notice of the defect in the title, or has before
his bid discovered such defect by an examination of the re-
cords, there would be good grounds for denying him any
relief; but if he has no actual notice, and bids in reliance on
the rule allowing him a reasonable time to examine into the
title, he ought not to be denied relief, merely because he had
constructive notice of the records at the time of his bid.
Then, from the facts before us, we cannot affirm with cer-
tainty that the record in Spillors *v.* Bramlett would disclose
in itself the fact of the deficiency claimed; for it may be that
some evidence aliunde was necessary to identify the land re-
covered in that case as a portion of the tract sold.   This
evidence was furnished the Circuit Court by the affidavit of
the purchaser, who after showing the identity, swore that he
did not know of the deficiency at the time of his bid.

5. The fifth exception imputes error in holding that said
purchaser had a right to time in which to investigate title
after sale, when the decree under which these lands
were sold directed the master to resell at the risk of
purchaser if he failed to comply within an hour after
his bid.   We do not think such direction in the decree
affects the question.   As a matter of fact, the master did not
resell, and no questions are before us growing out of a resale
at the risk of a purchaser.   The master has seen fit to report
the matter to the Court for guidance, instead of attempting to
resell, and the Court by its decree has again instructed the
master in the premises.   Notwithstanding the direction to
resell on non-compliance, it was competent for the Court in
these proceedings to direct acceptance of the purchaser's bid,
less the abatement allowed.

6. The remaining question is covered by the eighth excep-
tion, which assigns error in allowing said abatement, or any

abatement of the purchase price of land sold at a forced judicial sale for the collection of money, in which there are no implied warranties, and to which the doctrine of caveat emptor applies, in the absence of fraud or misrepresentation. In execution sales by the sheriff, the maxim of caveat emptor is rigorously applied. A sheriff under an execution is not directed to sell specifically described property, is governed by general laws, and is not the agent of the Court in such sale. The Court does not confirm his sales and exercises no supervision over them, as it does with reference to sales under its own order. A sheriff selling under an execution cannot be said to represent in any way the defendant in execution, except in so far as by general law he is made the organ by which the interest of the defendant in execution in property sold is conveyed to the purchaser. Hence it has been long settled that purchasers at an execution sale by a sheriff buys at his peril, in the absence of fraud or misrepresentation. This, in a large degree, accounts for the sacrifices often attending execution sales, for it is reasonable to suppose that a prudent purchaser will make allowance in his bid for the contingencies of his purchase. In some jurisdictions this stern maxim of the common law is applied to all judicial sales at law or in equity, but in this State a more liberal and reasonable rule prevails. In equity sales the Court is the vendor. Its order of sale acts on specifically described property. Purchasers are invited by the Court to bid, and it is well known that bidders at such sales feel a greater sense of security that they will get the described property, or be treated with equity. This tends to make property bring its value, a thing to be desired and encouraged. Now if one who seeks equity must do equity, ought not a Court of Equity, becoming a vendor of property at the instance and for the benefit of the parties concerned, do equity and render appropriate relief to a purchaser, when the Court finds itself unable to convey what it advertised to sell? Surely the Court will not do less than it would compel any other vendor to do in the case of a private sale. The prin-

ciple is well established that at partition sales relief will be extended to a purchaser for defect of title. The purchaser at such sales will not be compelled to perform his contract to purchase, if his title is doubtful. *Fuller* v. *Missroon,* 35 S. C., 326; *McMichael* v. *McMichael,* 51 S. C., 555. In the case of *Monaghan* v. *Small,* 6 S. C., 177, this principle was applied to a sale under proceedings to sell lands of a decedent, in order to apply the proceeds to the payment of his debts and for distribution. I see no good reason why a rule applicable to partition sales, and sales for the payment of the debts of a decedent, is not also applicable to a sale under foreclosure of a mortgage. In all such sales the Court is vendor at the instance and for the benefit of the parties in the enforcement of a right. In the case of *Bolivar* v. *Zeigler,* 9 S. C., 287, the Court made a broad path for equity in these words: "Whatever doubts may have been once entertained as to whether the doctrine of *caveat emptor* applied to sales made by the commissioner in equity, those doubts were finally settled by the principles established by the case of the *Commissioner* v. *Smith,* 9 Rich., 515, and there can be now no doubt that this maxim does not apply to such sales, and, therefore, that the defense here set up, if established on the trial, will be a sufficient defense to the action. For although the sale in this case was made by the sheriff, yet it was not a compulsory sale under process of execution, where the rule of *caveat emptor* does apply, but a sale for partition, at the instance of the parties, and must be governed by the same principles as applied to such sales when made by the commissioner in equity." That able and learned annotator, Mr. A. C. Freeman, in a note to *Burns* v. *Hamilton, Admr.,* 70 Am. Dec., 575, and fortifying the statement by numerous citations, says: "It is held in some States that the rule of *caveat emptor* applies to mortgage, partition and other equity sales, * * * and that in the absence of fraud or warranty, a failure of title to the property sold is no ground for the relief of the purchaser. But the better rule is that in equity sales the purchaser is entitled to receive a title free from

equities and incumbrances of which he had no notice; and if
by the sale he will not receive such a title, he will not, upon
his making objection, be compelled to complete his purchase,
but will be released therefrom, unless the title can be made
good, or other just relief awarded." The case of *Latimer*
v. *Wharton,* 41 S. C., 508, contains some language from
which it might be inferred that the Court regarded the rule
of *caveat emptor* applicable to an executed sale under fore-
closure for debt, on the grounds that such a sale was com-
pulsory, and so would come under the rule applicable to exe-
cution sales by the sheriff. But the point decided in that
case was, that if the purchaser of land, sold at a judicial sale
for the purpose of paying debts of a testator, gives a bond
and mortgage for the purchase money; if, upon default in
payment, he is sued, but fails to plead failure of considera-
tion in defense, and judgment is obtained; and if, before pay-
ment, the land so purchased is recovered by title paramount,
and execution on such judgment is levied on other property
of the purchaser, an injunction will not issue to enjoin a sale
under such levy, upon the complaint of the purchaser, who
made no allegation of fraud or misrepresentation by which
he was induced to accept the deed to the land, enter into pos-
session thereof, or execute the bond and mortgage to secure
the credit part of the purchase money. That case was very
different from this case, where the contract is executory, and
where no element of waiver or estoppel enters. In that case,
the Court recognized a great difference between enforcing
an executory contract and giving relief after it has been
executed, referring to the several cases where the distinction
was recognized, viz: *Evans* v. *Dendy,* 2 Spear, 9; *Fuller* v.
*Fowler,* 1 Bail., 75; *Prescott* v. *Holmes,* 7 Rich. Eq., 1.
See, also, *Parker* v. *Partlow,* 12 Rich., 683. So that even if
the rule of *caveat emptor* should apply at all to sales by the
Court of Equity, it should only apply after the sale is exe-
cuted. The contract of a bidder at a sale in equity is not exe-
cuted until he has complied with the terms of sale and
received the officer's deed of conveyance, or done something

which should estop him from asserting that the contract was not executed.   If a purchaser at a sale in equity, after discovery of the defect in title, complies with his bid and goes into possession of the land, it might with force be contended that such purchaser is estopped to assert such defect afterwards; but no such case is presented here.   The contract of the purchaser in this case is executory merely.   But further, we think it may be said in this case that there was a misrepresentation as to the property sold, for which cause relief would be granted, even after an executed contract, if no element of waiver or estoppel interposed to prevent.   It is not essential that such misrepresentation be intentional.   It appears that the land was conveyed to the mortgagor in 1876.   In 1888, a portion of the land was recovered from the mortgagor by title paramount, in the case of Spillors *v.* Bramlett.   After this the mortgagor, with knowledge of this recovery, but probably not thinking of it at the time, executed the mortgage on land, a part of which he did not own.   This misrepresentation, so incorporated in the description in the mortgage, went likewise into the complaint, decree and advertisement, which followed the description in the mortgage.   This minute description in the mortgage and advertisement, already referred to in this opinion, giving courses, distances and corners, was as if a plat of the land had been made by a surveyor and exhibited at the sale as a plat of the land sold.   The case of *Tunno* v. *Fludd,* 1 McC., 122, which also decides that the rule of *caveat emptor* does not apply to sales by the master in chancery; for he being the agent of the parties for whose benefit the sale was made, they are as much bound by his representations as they would have been by their own, further decides that where a tract of land has been sold by the master in equity, and represented upon a map as containing more acres than it was discovered upon a resurvey to have, an abatement will be allowed for the deficiency in the quantity according to the nature and extent of the defect.   To the same effect is *Barkley* v. *Barkley,* Harper, 284.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE POPE *concurs on the ground of a misrepresentation as to the land sold.*

MR. JUSTICE GARY *concurs in the result.*